Mr. Root, you may proceed. Thank you. May it please the Court, it's my pleasure and privilege to be here today on behalf of Ledeva Pierce, her children, and Ken Ross, and his children. Hold on just a second. We have some traffic and some noise outside. Let's let everybody get seated and we'll restart the clock. Thank you, Your Honor. All right, I think we may proceed now. Mr. Root. Thank you, Your Honor. May it please the Court, it's an honor to be here today on behalf of Ledeva Pierce and Ken Ross and their children. They sought to intervene in a case that has been to this Court many times, but not in many years. This is the continuation of the 1972 desegregation case that was filed against the City of St. Louis and the State of Missouri regarding de jure racial segregation in public education. The case was litigated hard for 27 years and resulted in a settlement in 1999. At the time of that settlement, on behalf of a class consisting of school-aged children and their respective parents and next friends residing in the Metropolitan School District of the City of St. Louis, the parties to that agreement brought an agreement to Judge Limbaugh, who approved the settlement in a court order. And where we're here now is in April of 2016, the school district and the class council came to court and urged that the settlement agreement should be interpreted to exclude revenues to the charter public schools in the City of St. Louis. Charter public schools in the City of St. Louis are where my client's children attend, and they are members of the class. They were members of the class at the time of the 1999 settlement, and they sought to intervene after asking class council to abandon their position in support of this relief because it would hurt their children's education. The district court, as you know, concluded my clients lacked standing. We believe that's wrong, and we ask the court to reverse that conclusion. As a matter of law, the district court started at the wrong place. The place to begin an analysis on a motion to intervene as to whether the intervener has standing is you assume the relief that is being sought by the plaintiff in this case is going to be granted. Okay, even if they get it, the legislature still might give you as much money you ever got. You would not be hurt at all. That's down the road to figure that out. I don't agree with that, Judge Benton. The legislature gives money to public schools in the City of St. Louis pursuant to the funding formula that was passed in Senate Bill 287 in 2005. And the funding formula allows districts and schools throughout the state of Missouri to receive funding in a set amount. And if there are charter public schools in the City of St. Louis or Kansas City, as there are, and the school district receives local tax revenue, the proportion of state aid under the formula is reduced by the receipt of that local tax revenue to the district and is proportionally per pupil increased to the charter public schools in an effort to equalize the funding between the two schools. Now, what the relief that is being sought would require is the state to discontinue that practice. The relief to be sought is it's a motion to enforce, correct? Correct. So you're getting us into the merits. Help me understand how this is different or the same when it's a motion to enforce a given decree, a consent decree, a settlement agreement, to which your clients were, were not parties to? Help me out here. Sure. Our position is they were parties. Okay, then let me stop you right there. If they were parties, why aren't they already represented? The answer to that is because class council has chosen not to represent them any longer. They've taken the position that somehow by operation of their educational decision-making, Mr. Ross, his child began his education in the St. Louis public schools. And the position of class council is when he made a decision to take his child into the charter public schools, he opted out of the class. Well, there's no opt-out provision in the settlement agreement. He didn't know he was doing that. And there are 6,000-plus African-American schoolchildren in the city of St. Louis who, at the time of the 1999 settlement agreement, clearly were members of the class. Those families are not being represented by class council, and they admit that they're not being represented. Well, was the district court concerned that these people could not intervene because they were members of the class? That wasn't the rationale, was it? The district court concluded that. I thought the rationale was that there was no cognizable injury. Well, the district court had two things. The district court said that there was no cognizable injury, that their interests were too remote, which we think is incorrect. But the district court also said on page 3 of its order that there was no evidence or argument that they were parties to or beneficiaries of the settlement agreement. There, in fact, was argument. There, in fact, was evidence that was presented to the district court. I don't understand why that's relevant to your standing, whether you were a beneficiary of the settlement agreement. I mean, even if you were not a beneficiary of the settlement agreement, you would still be making the same argument that you're injured because the school that you attend is going to lose millions of dollars. That's right, Judge, and I think in this case we have two independent bases for standing that the district court got wrong both times. There's the first basis that is we're injured by the relief that is being sought. If the relief is being granted, there will be $50 million taken out of the state education department, and there will be an order from the federal court that the settlement agreement prevents the state from reducing the proportionate aid to the district and increasing the proportionate aid to the schools my client's children attend. That's the relief that's being sought. And you allege that if that happens, that your clients and their children would suffer a loss in educational funding for teachers' facilities and equipment necessary for the children's education, right? That's correct, Judge. And that's the allegation on which you base your claim of injury in fact? That's correct. That's correct. Now, as far as whether that would actually happen, do you think that's a factual issue that could be raised later in the litigation? I think there would be evidence presented regarding that if we were allowed to intervene. And as to the resolution of that factual dispute, if it was, in fact, a dispute, it would be appropriate for the district court to resolve that. Where we are right now on Rule 24 is we are interpreting our allegations liberally in favor of intervention, so the district court won't resolve this case without a concrete understanding of the factual scenario that he's addressing. Which gets us again back to the independent basis for standing, which is that we were members of this class. Ms. Pierce was a 1995 graduate of the St. Louis Public Schools. At 1999, her older son was a student in the St. Louis Public Schools. She and he had bad experiences in those schools. Why does that give you standing to intervene? I mean, ordinarily a class member is presumed to be represented by class counsel, and there hasn't been any motion to remove counsel or something for inadequately representing the class. We have not moved to disqualify class counsel, and I don't think we should. Class counsel has done a great job for many years representing the schoolchildren in the city of St. Louis. And then, to our great surprise and dismay, in April of 2016, they took sides with the school district in a funding dispute. But what authority is there that class members who end up disagreeing with the approach of class counsel can intervene? Is that an accepted proposition? Fortunately, it is, Your Honor. You need to look no further than this case. In 1976, in this case, in the underlying case, the plaintiffs had reached a tentative settlement agreement with the school district that was only going to apply to certain types of educational settings. The NAACP and Ms. Caldwell disagreed with that and sought to intervene to represent the members of the class. And the district court said, you're too late. You may not intervene. You are untimely to intervene. And this court said, no, no. They had no way to know that this was going to affect their interests until such time as class counsel approached us. You mean Caldwell was a member of the class? Caldwell was a member of the class. But she was allowed to intervene on her own behalf, is that what you're saying? That's right. She was allowed to intervene on her own behalf. And that's what we are seeking here. There are families that are not going to be heard by the district court. There will be evidence that no party is presently equipped to present to the district court. Why can't the state? I mean, I know this gets into Rule 24, and there's a question whether we would address that if we thought you had standing. But there is discussion in the briefs about it. Why would the state not be in a position to defend its own statute? Well, the state's positions are broader and their interests are broader than the interests of the people I represent. And as this court has said in National Parks Conservation Association and South Dakota versus Ubehold, sorry if I'm butchering that name, where the individuals who seek to intervene have a more narrow set of interests that may not be protected by the state. Under the parens patrie doctrine, they are allowed to intervene and, in fact, have standing to protect their own interests because they're more narrow and more specific than the broad state interests. But I thought the issue here would just be whether the state law is consistent or inconsistent with the consent decree. That's one issue. There are other issues in this case. We believe that our clients have a luscious defense to this interpretation. You're afraid the state won't raise some of the defenses that your people would raise? Correct. And they haven't. They, in fact, have not raised the defenses that much. In fact, they said they're going to say nothing about the merits, right? That's correct. They filed that in this case. That's correct. The state has said our position is solely jurisdictional. You're in the wrong court and we're not going to say anything else. Well, what if they lose on their jurisdictional argument? Then what happens? I don't know what happens, Your Honor. If my clients aren't allowed to intervene, I won't have a say in what happens. No, I mean you're saying the state has not said whether it would defend its own statute if the case is properly in federal court? The state has affirmatively filed pleadings when asked by the district court for its position on the merits and said the state has deliberately not taken a position on the merits of the relief being sought by the motion because we believe you're in the wrong jurisdiction. Not to be too crass, is that still the state's position today to the best of your knowledge? To the best of my knowledge, it is. Because that was filed before the administration changed. It is. And there's nothing in the record that would suggest otherwise. Has the district court ruled on this jurisdictional question? The district court has not. And frankly, I've been living in fear since the district court denied our motion to intervene that something would happen on the merits in the interim. Fortunately for my clients, it has not happened. And I hope it does not happen. But the district court continues to have jurisdiction over the case. And there are no pleadings opposing the relief being sought. None. The only one that was filed was attached to my motion to intervene. Well, I understand. But I thought the district court would rule in sequence. Presumably it would first decide jurisdiction and then wouldn't at that point the state have an opportunity to address the merits if it so chose? It may. You know, it's up to the district court how to handle the case. And what we would like is an opportunity to participate in that case. We believe we have an injury. We believe that we have clear causation and redressability. What do you say to the argument that you're pleading and some of the affidavits use the words could and might? I forget if it says might. I know it says this could happen, that could happen. It does. Because we don't know specifically what the nature and extent of the injury will be. And as this court said in National Parks Conservation Association, you don't need to know the nature and extent of the injury in order to have standing. If you have the injury, you are allowed to intervene and try and protect against the injury. And that's what we'd like the court to rule. I'd like to reserve the balance of my time. All right. You may. You may. Let's see, there are three attorneys arguing for the appellees, and I understand Mr. Knorr wishes to argue first. Is that right? Yes. All right. We'll hear from you first then. You may raise that. There's a button on the right side there. On the right side of the podium can be raised. It'll go up for you. There you go. Okay. Thank you. Good morning. May it please the court, counsel. My name is Ronald Knorr Wood, and Bridget Hoy and I represent the St. Louis Public Schools District and the Special Administrative Board. In 2015, this court, in the case of United States v. Juranis, denied intervention on standing grounds by concluding that the arguments, the theories that were being asserted were at odds with the governing contract and the governing law. We respectfully submit that in this case, the arguments raised by appellants, raised by amici, quite frankly, are at odds with reality, at odds with the factual reality of what this case is really about, pending now going on 40-plus years. Their arguments are at odds with the various decisions of the district courts, various district court judges, Judge Hungate, Judge Gunn. Before you get too far in the weeds, why didn't the district court address jurisdiction first? Because it was a key part of the settlement with the Missouri legislature, put right in the decision that any future claims shall be adjudicated only in state court about the monies and the sales tax revenues. I mean, that's glaring, counsel. Well, no. Actually, the language of the settlement agreement provides that if there's a dispute between the plaintiffs and the state, that that would be litigated in federal court. And if there's a dispute between the SAB and the state separate and apart from that, that would be litigated in state court. Well, go slowly with me because all I know is what the Attorney General briefed. Tell me what's supposed to be in state court and what's supposed to be in federal court. I thought the money stuff was supposed to be in state court. No, no. Or else the state wasn't going to agree to give the money. No, that wasn't it. Anytime the plaintiffs are seeking to enforce the settlement, they have a right to be in federal court, which is what we have in this case. But wait, wait, wait. What about the agreement approved by Judge Limbaugh? I thought said the money claims were going to be in state court. Tell me the truth. That is not quite accurate. Okay. What's supposed to be in state court? That's what I'm trying to get at. If there is a situation, and this had occurred in a prior case, where it's solely a dispute between the special administrative board and the state, those go to state court. If there is a dispute, and we've had many disputes that have been resolved by the district court. For instance, there were some Section 10 monies, which involved money set aside for facilities. And when there was a dispute, and with the consent of the state, those went back to federal court. Between the state and the board about money, it's in state court, right? If it's solely the SAB and the state. The school board. Go ahead. The school board, right? That's right. If it's solely involving those parties, it would be in state court. If it involves the plaintiff seeking to enforce the settlement, then they have a right to be in federal court, which is why we're in federal court today. All right. Now, going back to your argument that the intervener, the putative interveners, are taking a position that's inconsistent with the orders of Judge Hungate and so forth, my concern is whether that gets into the merits of the motion to enforce. You seem to be saying, well, they have no claim on the motion to enforce, because this money is clearly supposed to be with the local schools. But why isn't that a merits issue, and the only question before us is standing? Well, there is an intertanglement. And as this court held in Geranus, the question is whether or not it's at odds with the contract. And so we have to look at the contract, the four corners of the contract, or the eight corners if you include Judge Limbaugh's judgment. And so based on that, if you look at that contract, it's pretty clear unquivocally that those funds were unconditionally assigned to the school district. But that's the whole dispute. I mean, that's the whole dispute in the district court over this motion to enforce, is whether you're right about that or whether the state law properly moved some of the money to the public charter schools. So I don't understand. You'll have to help me why that isn't the merits as opposed to standing. Understood. If we focus on standing, the question is whether or not the record shows a concrete injury. And under Spokio, it has to be a real injury. It can't be, which is what Mr. Root in the hearing, in fact, I'll quote from Mr. Root, when Judge Autry looked at him in a perplexed way and asked him, okay, well, what is the injury to your client? What in the record, what have you produced to show this injury? And at page 594 of the joint appendix, he said, quote, and if the charter schools lose funding and the charter schools have to reallocate resources, some may have to close. I don't know exactly what the financial circumstances are for the charter schools. We may be able to present evidence on that if we are allowed to intervene in this case, but that's down the road. Well, doesn't it mean how bad it's going to be? It's going to be bad. I still don't know how bad it's going to be. Well, what the Supreme Court has held in Spokio, in the Whitman case, in the Hollingsworth case is that they have to present evidence in the record when there's a jurisdictional challenge. You can't wait down the road because that's not concrete because that's what the Supreme Court has said. Why don't we just go based on the pleading at this stage? Well, that's exactly what the court in Whitman and Hollingsworth, and, in fact, even in this court has held, that you can't go by the pleadings when there's a challenge. You have to have record evidence to show this injury. Pleadings aren't sufficient. Allegations in the pleading is not sufficient, and that's in the Whitman case, the Kinder case by this court, and that has to be presented in the record at the time of the challenge. We believe that, and their main argument relates to Senate Bill 781, and their position is clearly at odds with Senate Bill 781 because under Senate Bill 781, the funding formula that was established for charter schools did not provide for this sales tax revenue to go to charter schools. Aren't you back to the merits? No. This is related to what the statute provides. Yeah, but they've been getting the money. You've got a list of $50 million, if I recall the number, of money they've been getting over the years. Starting in 2006. I know. Let me continue. So they've been getting the money, for sure. So now we're on the merits. What does Senate Bill DSEG bill mean? Well, they rely on 781 in their brief. Right. And they say that 781 gives them a right to receive desegregation sales tax proceeds, and what I'm suggesting is that under 781, that was not the case, and for seven years we received every penny of that revenue, and it wasn't until the state changed the law by way of 287, Senate Bill 287, that then that money, which our view constituted the breach, began to flow to them. Ten years ago. That's right. Ten years before you went to court. Go ahead. That's right. And they basically, if you look at the statute and how it was framed up in terms of funding, that funding consistent with the settlement agreement, and that money that flowed to us unimpeded for that seven years with no objection by the state, no objection by interveners, no objection by anyone, and then our position is that when the state changed the statute and interpreted the statute to include monies that were specifically allocated by the settlement and by Judge Limbaugh to go to the St. Louis Public Schools District, that that constituted the breach. What is your position on their statement that they're able to intervene, as did Caldwell years ago, as class members who aren't being represented by the class? Well, Your Honor, first of all, this is post-judgment, and Federal Rule 23 talks about when it can be modified, when a final judgment can be modified. Because this is on a motion to enforce, correct? And this is specifically on a motion to enforce and a motion to hold the state in contempt. And in the last 40 seconds I have remaining, they claim some derivative harm basically by the loss of funds to charter schools, but the missing link, as pointed out by Judge Benton, is that the state hasn't indicated that they're going back against those funds, nor, in our view, do they have a legal right to go back against those funds. Well, what about prospectively, though? Even if they don't go back, this is a stream of funding that's going to be eliminated going forward. Well, we believe that under that statute it's two prongs. The formula says charter schools get a certain amount of money, and we believe the state will continue to be obligated to pay that part of money. The issue we have is when they take our money to give them. They can use state funds under that formula, and we believe they're required to, and could pay them their money and pay us our money, because that's what they were obligated to do by way of the final judgment. You think state law already requires that the money, the amount that's coming from the local tax be provided to the charter schools? The state law added in Senate Bill 287 in 2006, it defined local revenue, and DESE, the Department of Education, is interpreting that to mean these settlement proceeds that were specifically designed to pay for specific- But I'm saying if you're right that those funds need to stay with the board- Yes. Then is there some state law that you say requires the state separately to provide that amount of money to the charter schools, or would that be an open issue? In that formula, the way the formula reads, the state would be obligated to pay them in accordance with the formula, and we would be entitled to keep our money under the orders as entered by Judge Limbaugh. But under the formula, you're saying they should not get this incremental amount that they're getting now from the local tax, right? No, no. What we're saying is that the state can't take desegregation settlement sales tax proceeds and use it for any purpose other than specific desegregation remediation programs, because that's what the parties agreed to. Okay. And I am out of time, and so I want to reserve and allow plaintiff's counsel to speak. Thank you. Very well. Thank you, Mr. Norwood. Mr. Dowthit, you may proceed. May it please the court, William Dowthit, on behalf of the Liddell plaintiff class, we seek to preserve, protect, and enforce our right to the remedial and compensatory programs stated in the 1999 desegregation agreement based on this court en banc's ruling that those remedies are the law of the case. In this court's en banc ruling in 1984 regarding that settlement agreement, there were specific provisions that were set forth. In part, when the court approved the remedy and compensatory programs in principle as the law of the case, it found that so long as the remedies relate to the constitutional violation, are remedial in nature, and account for state and local autonomy following Milliken, they would be enforced. This court, in its review en banc of the 1983 decision, pointed out the district court order binding on all parties that the sole purpose for the expenditure of funds under the remedial and compensatory remedies was to carry out the constitutional responsibility to remove the vestiges of segregated education. Why can't that be done through charter schools, counsel? They're a non-party, your honor. Pursuant where, as here, there is an adjudicated equal protection violation where this court in Adams determined that there were only two adjudicated constitutional violators, the absent state of Missouri and the St. Louis public schools. The dual system was determined by this court en banc within the St. Louis public schools. That is where any desegregation remediation would lie. Charter schools created post-final judgment may share- Counsel, charter schools were in the deseg bill that ended all this, right? That's when they were first authorized in the whole state of Missouri? Well, in St. Louis, Kansas City, I'm sorry. That's when they were first authorized in St. Louis, Kansas City. Go ahead. Judge Benton, we were engaged in settlement negotiations. A unilateral act by the Missouri legislature does not impose a settlement condition when parties are equally engaged in negotiations under court supervision. So the legislature was not a part of this legislative process. The governor and the legislature were not a part of this, right? Absolutely. They were represented by the state of Missouri at the negotiating table, and I can state in my place during those negotiations as one of the negotiators that at no time did the Liddell plaintiffs consider, negotiate, acquiesce, or accept charter schools as part of the remedy. They were a non-party, never called before this court or the district court for a segregation violation. Therefore, they were not part of the settlement agreement, strangers to our contract, that as a remedy, it's a non-entity. The remedy for the rulings of this court must be within St. Louis public schools. The district court found that the sole purpose for the expenditure of funds being to remove the segregated school system, that in no way can any funds be the city board's constitutional violations. My time has expired. I'll defer to counsel for the Caldwell NAACP plaintiffs. I thank the court and request that the district court be affirmed in this matter. All right. Thank you, Mr. Dowlett. Ms. Johnson, we'll hear from you. May it please the court. My name is Veronica Johnson. I represent the Caldwell NAACP plaintiff class in this matter. I want to start out by stating our position very succinctly. The proposed intervenors appear in this court as beneficiaries of the state of Missouri's violation of our settlement agreement, a violation of a federal court order. This court must assume that to be true, that that's what we're going to be proved, that's what we'll be able to prove in the lower court. Under no theory of law or fact is being a beneficiary of a violation of a court order a legally protected interest. Now, why do we assume that you are going to win in the district court rather than assume that the putative intervenors' claim has merit? In order to determine whether they have standing. Right. In order to determine whether they have standing, whether they have a legally protected interest, you have to assume that we will be successful in proving that there's been a that's what the case law says. What case do you suggest? Oh, golly. I'm sorry, Judge. I don't have one for you. Normally when a plaintiff is suing and claiming standing, we're required to assume that the plaintiff's claim has merit. Correct. And so, by analogy, they're arguing when a punitive intervener moves to intervene, we have to assume that the intervener's claim has merit. So the intervener's claim is that they're entitled to this desegregation remedial funds. Correct? I gather their claim is that the state law is not inconsistent with the settlement agreement. Correct. Their position is that there has been no breach, but what I would say is that the money that the desegregation sales tax generated, that the state didn't have the authority to assign that to the charter schools. The state of Missouri may have to pay that itself, but it can't take it from our remedial funds. That's our position. All right. Very well. Thank you. Thank you for the argument, Ms. Johnson. Mr. Root, you have a little time remaining for rebuttal, so we'll hear from you. Thank you, Judge Colleton. It's a great place to start. I think in National Parks Conservation Association, this court said when evaluating a motion to intervene for the purposes of standing, you assume that the injurious relief the plaintiff is seeking will be granted and evaluate whether that relief, the injury that flows from that relief, is adequate to confer Article III standing on the intervener. We believe that it is, and it's in our addendum. We put forth evidence, put forth affidavits from Ms. Pierce and Mr. Ross, that the relief that's being sought will have a direct impact on me and my children. It will hurt my children's education. It will disrupt my children's education and their academic achievement. We don't know exactly how, but we don't have to know exactly how. The injury is certain. The nature and extent of that injury is as yet unknown. And the reason that, to go back to Judge Benton's questions about jurisdiction, that we're in federal court is because the plaintiffs have joined with the district in seeking this $50 million in back money and a prospective injunction against delivery of that money going forward. And so it may be a manipulation, and Judge Lautry may accept the state's position that they're in the wrong court. I don't know what's going to happen with respect to that issue. But whichever court they're in, my clients are going to want to intervene and be heard and argue that the settlement agreement should not be interpreted this way. At the beginning of the settlement agreement, which was approved by Judge Limbaugh in 1999, it says, When the legislature passed the desegregation bill that gave great impetus to this settlement, in the words of Judge Limbaugh, gave extraordinary impact to the settlement, it also created these charter public schools as a place to ensure that the plaintiff's school children's education would not be impaired by the past effects of segregation. It didn't exclude them from the class. It didn't exclude children who had chosen to go to school at a parochial school in the city of St. Louis. If they lived in the city of St. Louis, they're members of the class and beneficiaries of this agreement. I have a question for you. Yes, Judge. I'm not sure I fully understood Mr. Norwood's point about the state funding, but I thought maybe there was an argument that if the local tax money cannot go to the charter schools, then the state law requires the state to provide that same amount from other sources, in which case I guess the argument is you wouldn't be injured because the money will come to you from one way or another. Is that accurate? I don't think so. I think there's a dispute about that. I think that from the state's perspective, this is a zero-sum game. There are state funds that are available to educate students in a district. But the state has not stated that as its position in this very case in their party, right? Correct. Thank you. Correct. And so the present law requires the state to try to equalize funding on a per-pupil basis based on weighted average daily attendance. As students flow into the district, the district's revenues go up. As students flow out of the district and into the charter public schools, the charter public schools' revenue goes up, similarly with the public magnet schools that the district operates. The state's interest is equalizing the funding for the kids. My client's interest is protecting their children's education. They should be heard. The relief that's being sought will harm their educational attainment. Under this court's precedent, they do have standing, and we'd urge you to reverse the district court. All right. Thank you for your argument. Thank you, Judge. Thank you all, counsel, for your presentations. The case is submitted, and the court will file an opinion in due course.